**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEANNIE RYAN,

        Plaintiff,

v.                                        CIVIL CASE NO. 05-74815
                                         HON. MARIANNE O. BATTANI

HAZEL PARK, JASON WEIMER, J. CLARK,
J. GIELNIAK, WAYNE COUNTY, and
E. FARRELL,

        Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Before the Court is defendants City of Hazel Park, Sgt. Jason Weimer, and Officers Gielniak and Clark's ("Defendants")[1] Motion for Summary Judgment (Doc. #53). Plaintiff sued Defendants, alleging that the officers violated her Fourth Amendment right to be free from unreasonable searches and seizures by utilizing excessive force in procuring her arrest. Plaintiff also contends that the City of Hazel Park promulgated unconstitutional policies, customs, practices or procedures, and/or that it failed to train, supervise and discipline its officers with respect to the appropriate amount of force to be used when securing an arrest under like circumstances. Defendants filed for summary judgment, contending there is no evidence supporting Plaintiff's claims.

---

[1] Defendants Wayne County and Wayne County Sheriff's Deputy E. Farrell have not joined in the motion.

## II.     STATEMENT OF FACTS

In October of 1999, Plaintiff was involved in a serious automobile accident when another vehicle broadsided her.  After admission to the hospital, Plaintiff received a psychiatric consultation and was diagnosed with acute anxiety reaction and post-traumatic stress disorder. Also as a result of that accident, Plaintiff developed a seizure condition which has been unresponsive to medication and treatment.

On March 23, 2004, Plaintiff suffered two back-to-back seizures, and because she was feeling extremely ill, went to bed until noon.  Nevertheless, she drove to her ex-husband's house to see her daughter.  While visiting her daughter, Plaintiff had yet another seizure, and once it was over, took her medication.  Plaintiff testified that she did not know what medications she had taken, only that her ex-husband gave her some medication from her purse, and she took it assuming that it was anti-seizure medication.  Plaintiff states that she was feeling dizzy and her legs were feeling very heavy and that she was weak from the effects of the seizure at the time she had to leave.

That evening, Sgt. Weimer attempted to stop Plaintiff's vehicle because he saw her swerve from one southbound lane of John R into another lane of traffic.  After Plaintiff swerved, Sgt. Weimer activated his overhead lights, but Plaintiff continued to drive for several miles and admittedly disregarded several traffic control devices.  Sergeant Weimer followed Plaintiff with lights and sirens activated at close range down narrow alleys and city streets.  Plaintiff appeared to stop at an intersection, but when Sgt. Weimer exited his patrol car and approached Plaintiff's vehicle, she drove off.   After Plaintiff drove away, two more Hazel Park officers joined the pursuit, also with lights and sirens activated.  Plaintiff still did not stop.  Finally, the defendant

officers were able to "box her in" and forced her vehicle to stop. It is undisputed that Plaintiff did not exit her vehicle voluntarily after being "boxed in" even when commanded to do so by officers. Moreover, even when forced to stop, Plaintiff did not put her truck in park, but left it in gear with the engine running, pushing up against the patrol car immediately in front of her.

After bringing Plaintiff's vehicle to a stop, the officers exited their patrol cars, with guns drawn, yelling and ordering Plaintiff to show her hands and get out of her car. Sgt. Weimer was the officer who had primary contact with Plaintiff after having initiated the pursuit. Sgt. Weimer testified that Plaintiff's window was open several inches and that he saw her hands, initially, in her lap, but then she began reaching around the interior of the vehicle. Plaintiff continued to ignore the officers' commands and stared straight ahead, while wearing sunglasses at night. Sgt. Weimer knew, from prior contacts with Ryan that she had no difficulty hearing, but had a history of alcohol abuse. He had also heard she had either mental or substance abuse problems, but believed that they stemmed from her violent domestic situation. Because Plaintiff refused the officers' commands, the officer took action to extract Plaintiff from the vehicle. Sergeant Weimer attempted to break the driver's side window with a flashlight. Unable to do so, he utilized a baton given to him by Wayne County Sheriff's Deputy Farrell, who had come to the scene to lend assistance. Once the window was broken, Sgt. Weimer was able to unlock the door and pull Plaintiff out of the vehicle.

He testified that she resisted by pulling away from him. She may or may not have been buckled in. Nevertheless, he was able to pull her out. When she did not comply with instructions to place her hands behind her, he utilized a straight-arm bar take-down technique to bring her to the ground. Sergeant Weimer testified that, as he was taking Plaintiff to the ground,

he felt the muscles in her biceps and forearms tighten up and pull toward her body, confirming his suspicion that she would continue to resist arrest. Sgt. Weimer admits that Plaintiff struck her chest and face when she went to the ground. Once on the ground, other officers assisted in holding her body down so that she could be placed in handcuffs. She was then immediately brought to her feet. When officers noticed that she was bleeding in the area above her right eye, they summoned medical attention. Hazel Park Fire Rescue evaluated Plaintiff on the scene, and because she informed Sgt. Weimer that she suffered from a pre-existing head injury, she was transported by private ambulance to the hospital.

     After her arrest, Plaintiff's vehicle was searched, and the contents inventoried. The vehicle contained a bag with a multitude of narcotic and sedative medications. She was ultimately convicted by a jury of Third-Degree Fleeing and Eluding, and was also found guilty of Assault/Resisting an Officer in violation of MICH. COMP. LAWS ANN. § 750.81d(1).

     Plaintiff testified that she does not recall any part of the pursuit, but relied on the videotape and police reports when she was deposed. She stated that she remembers leaving the house of her ex-husband with the radio on and the window partially down. She further recalls proceeding southbound on Woodward and making a left turn onto Nine Mile, but contends that she was feeling sick when she left her exhusband's house. She stated that she had been suffering from seizures most of the day. She testified that after she made the left turn onto Nine Mile Road she began experiencing a jerky feeling on her right side, the side on which she experiences most of her seizures. She suggests that she wasn't ignoring the three patrol cars that were following her with lights and sirens activated at close range, rather, she was just "out-of-it." She had no evidence to suggest that the officers knew of her alleged seizure activity before her arrest.

4

She also stated that she has no memory of the officers boxing her in, ordering her out of the car, asking her to keep her hands in view, or forcibly removing her from the vehicle. She theorized that she did not hear the officers because her radio was on. She testified that she remembers nothing up to the point where she was standing face-to-face with Sgt. Weimer outside of her vehicle. At this point, she remembers that he tripped her "really fast," and her head hit the pavement. Plaintiff suffered a cut to her eye and a significant black eye. She also claims that since the incident every time she sees a police officer she goes into a terrible panic, and that she suffers from nightmares and low self-esteem because of the incident.

In her Complaint she alleges that the defendant officers violated her Fourth Amendment right to be free from an unreasonable search and seizure, committed assault and battery, and were grossly negligent in their actions. Plaintiff also alleges that Wayne County and Hazel Park are liable for failing to adequately train their officers, for failing to adequately supervise their officers, and for possessing policies or customs that led to the officers' unconstitutional acts.

As part of her Fourth Amendment claim, she alleges that Defendants used excessive and unnecessary physical force by forcefully grabbing her, tripping her, kicking her, and throwing her to the ground face first. She claims that Defendants used unreasonable force because the pursuit was at low speed, she was never physically or verbally aggressive with Defendants or otherwise posed a threat to them. She claims that the officers knew she was not a threat to them because she was staring into space, facing forward, and because the officers knew she had mental problems. Further, she contends defendants actions were unreasonable because her window was rolled halfway down, thus, there was no need to break her window. She also claims that Sgt. Weimer did not warn her that he was going to break her window or take any precautions

to protect her from broken glass. She further alleges that an excessive amount of pepper spray was used because the medical records indicate that she had burns on her face.

### III.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the

nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  Mich. Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

**IV.   DISCUSSION**

### A.   Plaintiff's Excessive Force Claim Is Barred by the *Heck* Doctrine

Ryan was convicted by a jury of fleeing and eluding and of assaulting/ resisting/ obstructing a police officer under MCL 750.81d(1).  The Supreme Court in Heck held that

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck v. Humphrey, 512 U.S. 477, 487 (1994)(footnotes omitted). The Sixth Circuit further explained that the doctrine barred a § 1983 plaintiff's excessive force claim, if allowing the suit to proceed "would necessarily imply the invalidity of his state . . . conviction." Cummings v. City of Akron, 418 F.3d 676, 682-83 (6th Cir. 2005).

In Cummings, the plaintiff was charged with two counts of assaulting a police officer, resisting arrest, illegal cultivation of marijuana, possession of marijuana, and obstructing official business. After unsuccessful appeals, Cummings pleaded no contest to a reduced charge of misdemeanor assault on an officer. Cummings, 418 F.3d at 682-83. The Sixth Circuit held that the Heck doctrine applied to bar the plaintiff's claim because:

> . . . success on Cummings excessive force claim would necessarily imply the invalidity of his state assault conviction. The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge.

Id. This case is similar to the Cummings case because "[t]he struggle between [Ryan] and the officers gave rise to both" Ryan's resisting arrest/assault conviction and the excessive force claim, and Ryan could have used the alleged excessive force as a defense to the charge. Id. She does not claim to have done so, or if she did, was unsuccessful. Plaintiff does not allege that Defendants used any unnecessary force after she was handcuffed. Therefore, under the Heck

8

doctrine, Ryan's conviction for assaulting/ resisting/ obstructing a police officer is inextricably intertwined with her excessive force claim because her claim arises from Defendants' use of force to subdue her.

Even if Plaintiff's excessive force claim was not barred by her conviction, the defendant officers are entitled to qualified immunity. Qualified immunity is an affirmative defense that shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The United States Supreme Court has set forth a two-prong test to determine whether an officer-defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 200 (2001). The first prong requires the reviewing court to inquire whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." Id. at 201. The court must "concentrate at the outset on the definition of the constitutional right and [then] determine whether on the facts alleged, a constitutional violation could be found." Id. 207. If a constitutional violation could be found, the second prong requires the court to decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right. Id. at 201. A government official will be entitled to immunity as long as the conduct does not amount to a violation of a clearly established right of which a reasonable person would have known. Harlow, 457 U.S. at 818. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation that he

9

confronted." Saucier, 533 U.S. at 202. "Both the right to be free from unreasonable seizures . . . and to be free from the use of excessive force under the Fourth Amendment . . . are clearly established [rights]." Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994).

However, in this case, the facts viewed in the light most favorable to the plaintiff do not show the officers' conduct violated a constitutional right. The Fourth Amendment's "objectively reasonable" standard is utilized when analyzing a plaintiff's excessive force claim. Graham v. Connor, 490 U.S. 386, 388 (1989).

> In determining whether an officer's actions were reasonable, the specific facts of each case are key. Courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Kostrzewa, 247 F.3d at 639 (citations omitted).

Defendants' actions were objectively reasonable under the circumstances. Plaintiff was fleeing and eluding police, posed an immediate threat to the safety of the officers or others because her car was in gear pushing the patrol car in front of her, she was not obeying the officers' commands, and she was actively resisting arrest or attempting to evade arrest by flight. Given the circumstances, the Court cannot say that the officers acted unreasonably by forcefully extracting her from her vehicle, and then once she resisted their efforts, taking her to the ground to handcuff her. Moreover, Plaintiff's actions and Defendants' reactions must be viewed from the perspective of a reasonable officer under the circumstances. In this case, Plaintiff led three police officers on a city-wide pursuit, disregarding traffic control devices and the officers' lights and sirens. Further, when Sgt. Weimer got out of his vehicle to make contact with her after she

apparently stopped at an intersection, she fled, continuing the pursuit. Once finally boxed in, but with her car still running, Plaintiff continued to ignore the officers as they shouted commands to her to keep her hands where they could see them and to exit the vehicle. Once outside of the vehicle, Plaintiff resisted the officers' attempt to handcuff her. Looking at the totality of the circumstances leading up to the arrest, "from the perspective of a reasonable officer on the scene," the officers' actions to extract Plaintiff from the vehicle and place her under arrest were objectively reasonable. Accordingly, because the facts viewed in a light most favorable to Plaintiff do not show that the officer's conduct violated a constitutional right, the officers are entitled to qualified immunity.

### B.     Plaintiff Has Failed to State a Cognizable Claim for Municipal Liability

In order for a municipality to be liable under 42 U.S.C. § 1983, a plaintiff must show that the defendant's objectionable actions were made pursuant to an official city policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). A municipality may be liable only when its policies are the moving force behind the alleged constitutional violation. City of Canton v. Harris, 489 U.S. 378, 389 (1989). A plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." Garner v. Memphis Police Dep't, 8 F.3d 358, 367 (6th Cir. 1993).

"A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." Blackmore v. Kalamazoo County, 390 F.3d 890, 900 (6th Cir. 2004). Therefore, because there is no underlying constitutional violation, Plaintiff's claims against Hazel Park are DISMISSED.

### C.     Plaintiff's State Law Claims

Defendants' Motion for Summary Judgment failed to address Plaintiff's claims of assault and battery and gross negligence which were pled in the First Amended Complaint and to which Defendants answered.  Plaintiff argues that because Defendants failed to raise these issues in their Motion for Summary Judgment, any arguments for dismissal are waived.  See Wright v Holbrook, 794 F2d 1152, 1156 (6th Cir. 1986) (argument raised for the first time in a party's reply brief will not be considered).  Defendants, however, contend that although they inadvertently omitted arguments supporting the dismissal of these claims, the court may consider these arguments when set forth in reply.

Arguments raised for the first time in a reply brief are generally not considered.  Wright v. Holbrook, 794 F.2d 1152, 1156 (6th Cir. 1986).  "The reason for this rule is clear: 'It is impermissible to mention an issue for the first time in a reply brief, because the appellee then has no opportunity to respond.'"  Id. (quoting Knighten v. Comm'r, 702 F.2d 59, 60 n. 1 (5th Cir. 1983).

Even though Defendants raised their argument for the first time in their reply brief, the Court can still grant summary judgment on these claims.

> '[W]here, as here, the material facts have been fully developed by the evidence presented by the parties and they establish that non-moving party-in this case, the Plaintiff-is clearly entitled to judgment as a matter of law, summary judgment may be appropriately entered in his favor notwithstanding the fact that no cross-motion for summary judgment has been filed. Dickeson v. Quarberg, 844 F.2d 1435, 1444-45 n. 8 (10th Cir.1988). *See also* Township of Benton v. County of Berrien, 570 F.2d 114, 119 (6th Cir. 1978); Coach Leatherware Co. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2nd Cir. 1991); McCarty v. United States, 929 F.2d 1085, 1088 (5th Cir. 1991); Merrell v. Bay County Metropolitan Transportation Authority, 707 F.Supp. 289, 295 (E.D. Mich. 1989); EEOC v. Allendale Nursing Centre, 996 F.Supp. 712 (W.D. Mich.1998) ("If after reviewing the motion of the moving party, a court finds that there are no genuine issues of material fact, and the law is on the side of the non-moving party, the court may grant summary judgment in favor of the non-moving party.")

12

Fruman v. City of Detroit, 1 F.Supp.2d 665, 674 -675 (E.D. Mich. 1998)(Rosen, J.).  Defendants are not the non-moving party in the traditional sense, however, there are no genuine issues of material fact regarding liability on these claims, and the law is on the side of Defendants.

"Governmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified. . . . . Specifically, a police officer may use reasonable force when making an arrest."  Brewer v. Perrin, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984).  "In a given situation, a police officer may use substantial, but necessary, force to subdue a suspect, resulting in injury to the suspect.  In such situations, there would be no liability on the part of the police officer, not because of the defense of immunity, but because there was no wrongful conduct, *i.e.* no 'tort.'"  Burns v. Malak, 897 F.Supp. 985, 988 (E.D. Mich. 1995).  Thus, while it is well established that an officer may use such force as is reasonably necessary to effect a lawful arrest, an officer who uses excessive force may be held liable for assault and battery.  White v. City of Vassar, 403 N.W.2d 124, 129 (Mich. Ct. App. 1987).  Because the officers used reasonable force in their encounter with Ryan, they are not liable for assault and battery.  Anderson v. Antal, 1999 WL 717993 (6th Cir. 1999).  Likewise, because there is no wrongful conduct, Defendants actions cannot be considered grossly negligent.

**V.    CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

13

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: April 20, 2007

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

        s/Bernadette M. Thebolt
        DEPUTY CLERK